### A97A0182. SHIRE v. THE STATE.
(483 SE2d 694)

ELDRIDGE, Judge.

On January 19, 1996, appellant Matthew Orlando Shire was arrested in DeKalb County for driving under the influence and driving left of the centerline. Appellant was issued two uniform traffic citations ("UTCs") at that time. Appellant filed a demand for a speedy trial in the State Court of DeKalb County on March 28, 1996, even though the state had not yet filed the UTCs or a formal accusation with the court and there had been no bindover hearing on April 2, 1996. Attached to appellant's demand was a copy of both UTCs; appellant also served the state with copies of the demand and the UTCs. However, since no case was pending against appellant, the deputy court clerk created a file, assigned a case number to the file, and entered the information in a computer. The clerk then sent a memo to the state directing them to refer to the case number when filing the accusation or other pleadings.

The state filed an accusation against appellant on May 21, 1996. When the case was not tried by June 30, 1996, the end of the April court term, appellant filed a motion for discharge and acquittal on July 8, 1996. Appellant challenges the trial court's denial of his motion to discharge. For the reasons set forth below, we affirm.

1. Appellant asserts that the trial court erred in finding that his demand for speedy trial was premature and, therefore, a nullity since neither a formal accusation nor a UTC had been filed with the court by the state at the time of the demand. There is no merit in this assertion.[1]

OCGA § 17-7-170 reads in part: "Any person against whom a true bill of indictment or an accusation is filed with the clerk for an offense not affecting his life may enter a demand for trial at the court term at which the indictment or accusation is *filed* or at the next succeeding regular court term thereafter[.] . . . If the person is not tried when the demand is made or at the next succeeding regular court term thereafter . . . he shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation."[2] (Emphasis supplied.) This statute raises two issues relevant to the case sub judice that have been addressed conclusively by Georgia's appellate courts: (a) when is a case "filed" with the court for the purpose of a speedy trial demand and (b) must a formal indictment or accusation be filed for a speedy trial demand to be considered timely?

(a) With respect to the first issue, the undisputed facts of the case sub judice indicate that, at the time appellant filed his demand for a speedy trial, no case was pending against appellant, since no UTC, indictment, or other accusation had been *filed with the court by the state*. Appellant admits that the deputy court clerk created a file for appellant's documents, assigned a case number to the file, and entered some information into the court's computer. Appellant also admits that he had attached copies of the UTCs to his speedy trial demand. Now appellant asserts that the administrative actions of the clerk, as well as the subsequent presence of unstamped UTCs in the file, constitute "filing" of the UTCs for the purpose of legitimizing his speedy trial demand.

This Court rejects appellant's argument. "Generally, a prosecution in state court commences with the filing by the solicitor of an accusation or UTC with the clerk of the court. OCGA § 16-1-3 (14).

---

[1] This Court notes that appellant's counsel has unsuccessfully asserted strikingly similar arguments under analogous facts in at least two previous cases. See *State v. Gerbert*, 267 Ga. 169 (475 SE2d 621) (1996); *Ghai v. State*, 219 Ga. App. 479 (465 SE2d 498) (1995).

[2] "OCGA § 17-7-170 was enacted to implement the constitutional provision for a speedy trial. . . . In the absence of a right to a speedy trial the accused might suffer uncertainty, emotional stress, and the economic strain of a pending prosecution indefinitely." (Citation omitted.) *Hubbard v. State*, 254 Ga. 694, 695 (333 SE2d 827) (1985).

There are many benefits to the solicitor, as the state prosecutor, determining whether a prosecution should proceed and when within the law it should do so. There are ethical considerations, which require the solicitor to insure that the evidence, such as lab reports, supports the charges prior to proceeding with a prosecution. Also, where, as here, there are multiple offenses charged, the early prosecution of one charge (DUI) . . . could ultimately bar [the prosecution of related charges], as multiple prosecutions of charges arising from the same incident are not generally allowed. The analysis and determination of such matters must be made by the solicitor as the trial [court] cannot properly do so." *State v. Rish*, 222 Ga. App. 729, 731 (476 SE2d 50) (1996).

"From the beginning of our criminal justice system prosecutors have exercised the power of prosecutorial discretion in deciding which defendants to prosecute. *Bishop v. State*, 265 Ga. 821, 822 (462 SE2d 716) (1995); see *Hicks v. Brantley*, 102 Ga. 264, 271-272 (29 SE 459) (1897) (prosecuting attorney is to determine whether or not to commence a prosecution). In the state court, the role of prosecutor is filled by the solicitor. See OCGA § [15-18-66 (b) (10)]; see also *Zater v. State*, 197 Ga. App. 648, 649 (399 SE2d 222) (1990) (solicitor's role in state court is same as that of district attorney who is the prosecuting attorney in superior court)." (Punctuation omitted.) *Rish*, 222 Ga. App. at 731-732. Adopting appellant's apparent argument that a defendant may "file" a case against himself by submitting UTCs, along with a speedy trial demand, to a court clerk severely infringes upon prosecutorial discretion regarding whether or not to proceed on a case based on the UTC, whether to promulgate a formal accusation, or whether to dismiss the charges altogether. This Court, absent statutory authority, refuses to assign such control over the disposition of a case to a court clerk. More importantly, we refuse to grant such control to defendants, who may be tempted to manipulate the system with untimely filings in an attempt to avoid prosecution.

"While not binding in this case, we note that the Georgia General Assembly recently enacted OCGA § 15-18-66, which provides in part: 'No accusation, citation, or summons shall be considered filed unless such filing has been done with the consent, direction, or approval of the solicitor-general. . . . Prior to the filing of an accusation, citation, or summons, the solicitor-general shall have the same authority and discretion as district attorneys over criminal cases within their jurisdiction.' OCGA § 15-18-66 (b) (10)." *Rish*, 222 Ga. App. at 732. This provision clearly expresses the General Assembly's intention to assign the power to initiate criminal cases solely with the state's prosecutors and serves to codify the prior holdings of the state's appellate courts.

(b) Moving to the second issue, in *State v. Gerbert*, 267 Ga. 169

(475 SE2d 621) (1996), the Supreme Court of Georgia considered "whether the right to demand a speedy trial attaches when a uniform traffic citation is filed with the court or only when a formal accusation is filed." In holding "that the [statutory] right to a speedy trial under OCGA § 17-7-170 attaches when the state files the uniform traffic citation with the court,"[3] the Supreme Court created a "bright-line rule." Id. at 169, 170. This rule clearly establishes the first possible opportunity for a defendant to demand a speedy trial, i.e., the *state's filing* of a UTC or a formal accusation (if no UTC has been filed). In so doing, this rule also "fulfills the purpose of the speedy trial guarantee — 'the right to have charges brought against one disposed of not only while witnesses are available and their memories are fresh but also so that the deleterious effects of a pending charge on a defendant are lessened.' " Id. at 170-171, citing *State v. Gerbert*, 219 Ga. App. 720, 726 (467 SE2d 177) (1995) (Beasley, C. J., concurring in part and dissenting in part), rev'd by *Gerbert*, 267 Ga. at 171.

Contrary to appellant's contentions, this holding is entirely consistent with this court's prior rulings. Under remarkably similar circumstances, this Court, in *Ghai v. State*, 219 Ga. App. 479, 480 (465 SE2d 498) (1995),[4] held "that a uniform traffic citation is not entered, within the meaning of OCGA § 17-7-170 (a) until it has been *duly filed* with the clerk of the courts. We find that *mere issuance* of a uniform traffic citation, without subsequently filing it with the clerk of courts, is not sufficient to authorize the entry of a filed demand for speedy trial pursuant to OCGA § 17-7-170 (a)." (Emphasis supplied.) See also *State v. Lipsky*, 191 Ga. App. 842, 843 (383 SE2d 204) (1989) (holding that a speedy trial demand is premature when neither a formal accusation or a uniform traffic citation has been filed with the court).[5]

2. Appellant also asserts that the state failed to prove that the UTCs were not in the file at the time the appellant filed his demand for speedy trial. However, by appellant's own admission, no case was pending against appellant and no case file existed at the time appellant filed his demand. It is therefore impossible for the UTCs to have

---

[3] A UTC may serve as an accusation in state or probate courts. OCGA § 40-13-1; see also *Gerbert*, 267 Ga. at 170. However, under OCGA § 40-13-3, the state is required to file an indictment or other accusation to proceed on a traffic offense in superior courts.

[4] In *Ghai*, supra, the appellant attempted to file a demand for speedy trial following his arrest for DUI and other traffic offenses. However, the court clerk declined to accept the filing on the grounds that it was premature, since the state had not filed an accusation or UTC with the court.

[5] While this Court recognizes appellant's concern that this rule may allow prosecutor's the opportunity to delay prosecution of a case "indefinitely" by postponing the filing of a UTC or an accusation beyond two court terms, thereby defeating the purpose of the speedy trial provision of the Code, this issue is not before this Court in the case sub judice, as an accusation was filed against appellant on May 21, 1996.

been filed with the court at the time appellant's demand was filed. This argument is disingenuous and clearly meritless. Further, "[n]oting that the citations contained no stamp or indication of filing, the trial judge factually concluded that the uniform traffic citations had not been filed in the trial court on or before the presentation of the speedy trial demand. . . . In a bench trial, the trial court sits as trier of fact, and its findings will not be set aside unless clearly erroneous. The trial court's findings of fact were not clearly erroneous." (Citations and punctuation omitted.) *Ghai*, 219 Ga. App. at 480.[6]

In summary, this Court affirms the trial court's finding that appellant's demand for speedy trial was filed prior to the filing of a UTC or other accusation by the state, so that the demand was premature and, therefore, a nullity. Even though the state subsequently filed an accusation against the appellant, " '[t]here is no provision in Georgia law whereby a prematurely filed speedy trial demand can be resuscitated by a later returned accusation (or indictment) whether they are filed in the same term or not.' " *State v. Black*, 213 Ga. App. 331, 332 (444 SE2d 368) (1994), citing *State v. McKenzie*, 184 Ga. App. 191, 192 (361 SE2d 54) (1987).

"The dismissal of a criminal case pursuant to OCGA § 17-7-170 is an extreme sanction which can be invoked only if there has been strict compliance with the statute. Under the circumstances in this appeal, the procedures followed did not strictly comply with the requirements of the Code section. Accordingly, the trial court did not err by denying the motion" for discharge and acquittal. (Citations and punctuation omitted.) *Grier v. State*, 198 Ga. App. 840, 841 (403 SE2d 857) (1991).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MARCH 7, 1997 — ▮▮▮▮▮▮▮▮▮

*William C. Head*, for appellant.

---

[6] This case is distinguishable from *Tyler v. State*, 224 Ga. App. 550 (481 SE2d 228) (1997). Contrary to the trial court's finding in the case sub judice, the trial court in *Tyler* made no finding regarding whether or not the UTC had been properly filed prior to the defendant's demand for speedy trial. On appeal, this Court found that the UTC had been filed with the trial court because it had been assigned a case number which was subsequently used on pleadings and other motions by the defendant. Therefore, this Court found that the UTC served as the accusation and the defendant's speedy trial demand was not premature. See *State v. Gerbert*, supra at 170. There exists a presumption of correctness that both the clerk and the prosecutor performed their respective duties when the clerk of court has stamped, initialed, and numbered the UTC, then entered the document on the docket. In the case sub judice, there was no evidence of such ministerial duties; the evidence showed that the UTC had been received but not "filed" by the clerk, because the defense counsel had no authority to "file" the UTC.

*Ralph T. Bowden, Jr., Solicitor, Charles C. Flinn, W. Cliff Howard, Elaine W. Brooks, Assistant Solicitors,* for appellee.